Signed and Filed: March 11, 2016



_____
**DENNIS MONTALI**
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

```
In re                              ) Bankruptcy Case
                                   ) No. 15-31452DM
DEBRA MARIE GUAJARDO,              )
                                   ) Chapter 11
                                   )
                  Debtor.          )
_____)
```

MEMORANDUM DECISION RESOLVING LIEN PRIORITIES

    This chapter 11 debtor has obtained court approval of a sale of certain property, and a dispute has arisen between her homeowners' association and the Internal Revenue Service ("IRS") as to whose lien has priority and has the superior right to distribution of the proceeds remaining after satisfaction of the claims of the first deed of trust holder. For the reasons set forth below, the court concludes that the IRS has priority, except as to a limited amount specifically set forth in the homeowners' association's notice of delinquent assessment.

## I. Background

    On March 4, 2011, The Montgomery-Washington Tower Association ("HOA") recorded a Notice of Delinquent Assessment ("NDA") asserting a lien ("HOA Lien") against a condominium unit located

in San Francisco (the "Property") owned by Debra M. Guajardo ("Debtor").  Two months later, the HOA filed a Notice of Default and Election to Sell under the HOA Lien, but no sale ever occurred.  The HOA Lien reflects that Debtor owed $10,366 in assessments due through February 25, 2011, plus late fees, attorneys fees, costs and interest in the amount of $2,493.95 (for a total delinquency in the amount of $12,839.95).  In text marked with an asterisk, the HOA also stated that "[a]dditional monies shall accrue under this claim at the rate of the claimant's regular monthly or special assessments, plus permissible late charges, costs of collection and interest, accruing subsequent to the date of this notice."

The rights, obligations and remedies of the HOA and Debtor (as well as other owners of units in the Montgomery-Washington Tower condominium complex (the "Complex")) are set forth in the Declaration of Covenants and Restrictions Establishing Plan of Condominium Ownership ("CCRs") recorded in the real property records on November 9, 1983.  Paragraph 4.6 provides that any lien assessed by the HOA "shall be prior to all encumbrances made by an Owner or imposed by legal process subsequent thereto except for taxes, assessments, bonds or other levies which, by law, have priority."  More significantly, paragraph 4.6 states that each assessment by the HOA "shall be a separate, distinct and personal debt and obligation" of the owner, while paragraph 4.6.2 provides that "within ninety days <u>after</u> the occurrence of a default," the HOA may give notice of the default to the homeowner.  (Emphasis added).  Paragraph 4.6.2 also states that "<u>[e]ach lienable default shall constitute a separate basis for a lien</u>."  (Emphasis added).

Thus the CCRs themselves do not contemplate or authorize a lien on future defaults; future defaults become the basis of a separate lien.

On June 3, 2013, the IRS recorded a federal tax lien with the county recorder in accordance with Internal Revenue Regulation 301.6323(f)-1. At that time, Debtor owed the IRS $180,813.89 in back taxes, assessments and/or penalties.

Debtor filed this chapter 11 case on November 23, 2015. On December 16, 2015, she filed a motion to sell the Property free and clear of liens, with proceeds to be distributed to lienholders in the following order: (1) the first deed of trust lienholder; (2) the HOA, and (3) the IRS.[1] The IRS responded by noting that the HOA Lien (except for the $12,839.95 amount specified in the NDA) cannot take priority over its federal tax lien. The HOA also opposed the motion.

At a hearing on January 8, 2016, the court directed Debtor to amend the motion to sell. Debtor filed an amended motion which was heard on January 22, 2016. The court authorized the sale at that hearing, and directed the IRS and the HOA to file supplemental briefs about the respective priority of their liens. Following completion of this briefing, the court heard oral

---

[1] Debtor also identified (and placed ahead of the IRS) certain individuals who recorded a lis pendens in 2011 in connection with state court litigation that is still pending, thus creating their own lien on the property. Debtor did not provide for payment of these individuals, as their claims are the subject of a bona fide dispute. On March 10, 2016, the court approved a stipulation whereby the individuals withdrew their lis pendens, with their liens attaching to the proceeds of the sale in the same order and priority notwithstanding the withdrawal. The court makes no determination of the priority position of these individuals vis-a-vis the HOA or the IRS.

-3-

argument on February 19, 2016, at which time it took the matter under advisement.[2]

## II. Issue

Do unpaid HOA dues accruing after the recording of the NDA have priority over the federal tax lien? For the reasons that follow, the court determines that the IRS prevails over the HOA, except as to the $12,839.95 amount reflected in the March 2011 HOA Lien.

## III. Governing Law

**A.   *California Law***

The rules, restrictions, and procedures for imposing, paying, collecting, and enforcing regular and special assessments in common ownership developments are set forth in articles 1, 2, and 3 of chapter 8 of the Davis-Stirling Act, codified as part 5 of division 4 of the California Civil Code (Civ. Code §§ 5650-5740). At the time the NDA was recorded in 2011, Civil Code section 1367.1 applied to the collection of delinquent assessments as well as the enforcement and priority of liens securing such collection.[3]

Under both the repealed section 1367.1(a)(2) and the current relevant provisions of the Civil Code (in particular, section

---

[2] Both the HOA and IRS have agreed that this inter-creditor dispute over lien priority can be decided by the court in the present procedural setting, without the need for an adversary proceeding under Federal Rule of Bankruptcy Procedure 7001(2).

[3] Effective January 1, 2014, this section and other provisions pertaining to common ownership development assessments and collection were renumbered to 5600 through 5740.

-4-

5660), a notice of delinquent assessment is to include an "itemized statement of the charges owed by the owner, including items on the statement <u>which indicate the amount of any delinquent assessments</u>, the fees and reasonable costs of collection, reasonable attorney's fees, any late charges, and interest, if any." Cal. Civ. Code § 5660 (emphasis added). In turn, both repealed section 1367.1(d) and current Civil Code section 5675 limit the lien to that specified amount:

> The <u>amount of the assessment</u>, plus any costs of collection, late charges, and interest, <u>shall be a lien</u> on the owner's separate interest in the common interest development from and after the time the association causes to be recorded with the county recorder of the county in which the separate interest is located, a <u>notice of delinquent assessment, which shall state the amount of the assessment and other sums imposed in accordance with subdivision (b) of Section 5650</u> [previously section 1367.1(a)], a legal description of the owner's separate interest in the common interest development against which the assessment and other sums are levied, and the name of the record owner of the separate interest in the common interest development against which the lien is imposed.

Cal. Civ. Code § 5675 (emphasis added). Here, the NDA that established the HOA Lien identified a delinquency in the amount of $12,859.95 and attached an accounting statement for that amount. It also contained a statement incorporating future unknown amounts:

> Additional monies shall accrue under this claim at the rate of the claimant's regular or special assessments, plus permissible late charges, costs of collection and interest, accruing subsequent to the date of this notice.

This language purporting to create a lien as to future unknown defaults is ineffective under both California contract law and under the Davis-Stirling Act. As noted above, paragraph 4.6.2 of the CCRs permits the HOA to give notice of default "within

-5-

ninety days <u>after</u> the occurrence of a default," and states that "<u>[e]ach lienable default shall constitute a separate basis for a lien</u>." (Emphasis added). This language is unambiguous: after a default, the HOA may issue an NDA. Future defaults are separate and can be the subject of additional and future NDAs. As this language is clear and explicit, it governs. Cal. Civ. Code § 1638; *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1264 (1962).

Even if the CCRs did not specify that NDAs are to be issued after a default, the language of the NDA purporting to incorporate future defaults is not permissible under the Davis-Stirling Act. While the court has not located case law addressing effectiveness of adding such non-statutory language to a NDA, the "future amounts" clause is inconsistent with the portions of the Davis-Stirling Act requiring the unpaid amounts to be specifically set forth in the notice and in an attached accounting.

That said, the HOA cites *Bear Creek Master Association v. Edwards,* 130 Cal. App. 4th 1470, 1488 (2005), which held that attorneys' fees and costs that continued to accrue during the foreclosure process became part of an association's outstanding lien pursuant to its recorded covenants, conditions, and restrictions. The lien provisions of the *Bear Creek* covenant, however, were much more specific as to future accruals than those in this case. In *Bear Creek*, the covenant stated that "any demand or claim of lien or lien *on account of prior delinquencies shall be deemed to include subsequent delinquencies* and amounts due on account thereof." *Bear Creek*, 130 Cal. App. 4th at 1470. The CCRs here are not that specific, instead imposing a "present and continuing lien" to secure the payments of levied assessments.

-6-

In any event, the general imposition of a "present" lien at the time of and by operation of the CCRs with respect to all future and potentially unknown assessments does not satisfy the notice and lien provisions of the Civil Code.

As acknowledged by the *Bear Creek* court, the California Legislature enacted the enforcement provisions of the Davis-Stirling Act to "create[] procedures for associations to *quickly and efficiently* seek relief against a nonpaying owner." *Bear Creek*, 130 Cal. App. 4th at 1489, *quoting Park Place Estates Homeowners Assn. v. Naber*, 29 Cal.App.4th 427, 431-32 (1994). Here, the HOA recorded its NDA in March 2011 and its Notice of Default and Election to Sell in May 2011. It took no further action to foreclose on its lien, but instead waited nearly five years before asserting its rights under the recorded documents and only after the Debtor moved to sell the property. The HOA did not utilize the collection and lien procedures to obtain the quick and efficient relief contemplated by the Legislature.

Even if the HOA Lien were enforceable under California law as to future assessment amounts, federal law governs the priority of that lien as against a federal tax lien. As discussed in the next section, the federal tax lien here has priority over the HOA Lien, except as to the itemized amount ($12,859.95) set forth in the NDA.

### B. Federal Law

To determine the priority of the IRS as against the HOA Lien, this court must look to federal law and not state law. *Aquilino v. United States*, 363 U.S. 509, 513-14 (1960) (("[O]nce the tax lien has attached to the taxpayer's state-created interests, we

-7-

enter the province of federal law, which we have consistently held determines the priority of competing liens asserted against the taxpayer's 'property' or 'rights to property[.]'").[4]  Although a state's classification of a lien is instructive, the effect of a state law lien relative to a federal tax lien "is always a federal question." *United States v. Sec. Trust & Sav. Bank of San Diego*, 340 U.S. 47, 49-50 (1950).

"Federal tax liens do not automatically have priority over all other liens.  Absent provision to the contrary, priority for purposes of federal law is governed by the common-law principle that 'the first in time is the first in right.'" *United States v. McDermott*, 507 U.S. 447, 449 (1993) (*quoting United States v. New Britain*, 347 U.S. 81, 85 (1954)).  It is well established, however, that a state lien competing with a federal tax lien is deemed to be "in existence for 'first in time' purposes only when it has been 'perfected' in the sense that '<u>the identity of the lienor, the property subject to the lien, and the amount of the lien are established</u>.'"  *McDermott*, 507 U.S. at 449–50 (emphasis added) (*quoting New Britain*, 347 U.S. at 84).[5]  Phrased

---

[4] *See also United States v. Rodgers*, 461 U.S. 677, 683 (1983)("[I]t has long been an axiom of our tax collection scheme that, although the definition of underlying property interests is left to state law, the consequences that attach to those interests is a matter left to federal law."); *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 722 (1985) (while the federal tax law does not create property rights, it attaches consequences to state law rights, and federal law governs the consequences).

[5] The Ninth Circuit has also acknowledged that under governing Supreme Court authority, "the lien that is competing with the federal lien must be perfected ... <u>in the sense that there is nothing more to be done to have a choate lien</u> -- when the identity of the lienor, the property subject to the lien, and <u>the amount of the lien are established</u>.  *In re Priest*, 712 F.2d 1326, 1327-28

-8-

differently, "[c]hoate state-created liens take priority over later federal tax liens, while inchoate liens do not." *United States v. Pioneer American Ins. Co.*, 374 U.S. 84, 88 (1963) (internal citations omitted). Therefore, to have priority over the tax liens, the HOA must establish that it had a choate, perfected security interest in the Property before the United States filed its tax liens. For the reasons set forth below, the HOA cannot satisfy the requirements as to any amount exceeding $12,839.95.

Here, the portion of the HOA Lien purporting to apply to future defaults was inchoate both when the NDA was recorded in 2011 and when the federal tax lien was recorded in 2013. The real property records do not reflect any further defaults; the existence and amount of future defaults were not "established" as required by the Supreme Court and the Ninth Circuit. Simply put, neither the IRS not anyone else examining the public record could know the extent of Debtor's unpaid debts to the HOA.

Other courts have applied "choate" test adopted by the Supreme Court in determining that similar HOA liens are not choate and thus not perfected for the purpose of acquiring priority over federal tax liens. *See Wellington Condominium Trust v. Pino*, 686 F. Supp. 2d 117 (D. Mass. 2010) (federal tax liens held priority over condominium board's lien against unit owner for unpaid common expenses, where board did not establish choate, perfected security interest in property, due to failure to ascertain amount owed, before United States filed its tax liens); *In re Henderson,* 155

---

(9th Cir. 1983), amended, 725 F.2d 477 (9th Cir. 1984) (emphasis added).

-9-

Case: 15-31452    Doc# 73    Filed: 03/11/16    Entered: 03/11/16 15:42:24    Page 9 of 12

B.R. 10 (Bankr. S.D. Cal. 1993)(HOA lien purporting to cover future assessments and defaults was not choate and did not have priority over later-filed tax lien).

In *Henderson*, the condominium association recorded a lien in 1985 for the unpaid sum of $651 and for all future assessments and expenses thereafter accruing and remaining unpaid. The federal tax lien arose in 1988 and was recorded in 1989. The court determined that the $651 lien recorded in 1985 was first in time and therefore prior to the federal tax lien. *Henderson*, 155 B.R. at 11-12. However, the lien for subsequent unpaid association dues did not become choate until the charges became due and a lien was recorded for the exact sums due and unpaid. *Id*. The court stated:

> [T]here is no basis for holding that subsequent unpaid [HOA] dues which may or may not remain unpaid due to various contingencies should be encompassed by that initial lien. <u>Those future unpaid dues are merely unmatured and contingent</u>. <u>The future dues are inchoate until the amount is made certain</u>, the lienholder's identity is established and the property is identified. Although it is arguable that the last two requirements are met, the amounts were impossible to ascertain in 1985 because they had not yet become due. Once they became due, <u>[the homeowners' association] should have filed liens for those certain amounts to perfect its interest</u>.

*Id*. (emphasis added).

The HOA contends that "choateness is an obsolete position based upon unreliable and inapplicable case law." This court disagrees. The Supreme Court has consistently issued applying the doctrine of choateness, as evidenced by the cases cited in this memorandum decision. Nothing has rendered those cases obsolete or ineffective; to the contrary, a recent district court decision

-10-

(2010) applied those principles in determining that a federal tax lien had priority over an HOA lien. *Wellington Condominium*, 686 F. Supp. 2d at 117.

The HOA also contends that the statutory exceptions set forth in 26 U.S.C. § 6323 prevent the I.R.S.'s "superpriority" lien from applying here. The court disagrees for two reasons. First, under California law, the HOA's lien is limited to the amounts specifically identified in the NDA and attached accounting. Uncertain future assessment amounts are not included. Second, even if the future assessments could be asserted as part of the lien under California law, section 6323(a) of the Internal Revenue Code provides priority only as to assessments that accrued <u>prior to</u> the filing of the federal tax lien in 2013. Once the federal tax lien was recorded, all amounts accruing after that date are subordinate to it.[6] At best, assuming the HOA Lien effectively included future assessments (which it does not), only those assessments accruing and unpaid through May 2013 have priority. 26 U.S.C. § 6323(a) and (b).

For the foregoing reasons, the court will enter an order that allows the HOA to receive only $12,839.95 from proceeds of the sale before any payment on the federal tax lien. Counsel for the I.R.S. should prepare an order consistent with this memorandum decision; before uploading the order, counsel for the IRS. should serve counsel for the HOA. with the proposed order in accordance

---

[6] Section 6323(a) protects lienholders and holders of security interests from unrecorded tax liens under section 6321. Once notice of the tax lien has been recorded, only those entities identified in section 6323(b) are protected, and the HOA does not fall into one of these categories.

-11-

with 9010-1(c) and file a separate proof of such service.

*** END OF MEMORANDUM DECISION ***