**United States Bankruptcy Court**
**Northern District of California**

In re:  
**DEBRA MARIE GUAJARDO**  
_____/

Case No. 15-31452-DM-13  
Chapter 11

**COMBINED PLAN OF REORGANIZATION**
**AND DISCLOSURE STATEMENT**
**10/4/2019**

**INTRODUCTION**

    This is Debtors' Combined Chapter 11 Plan of Reorganization and Disclosure Statement (the Plan).  The Plan identifies each known creditor by name and describes how each claim will be treated if the Plan is confirmed.

    **Part 1** contains the treatment of creditors with secured claims: 100 % of their allowed claims have been paid prior to confirmation from the sale of Debtor's real property; **Part 2** contains the treatment of general unsecured creditors: a pro rata portion of $95,712.86, likely to result in a  13.60% recovery of allowed claims in a lump sum payment.  Taxes and other priority claims would be paid in full, as shown in Part 3.

    Most creditors (those in impaired classes) are entitled to vote on confirmation of the Plan.  Completed ballots must be received by Debtor's counsel, and objections to confirmation must be filed and served, no later than November 27, 2019.  The court will hold a hearing on confirmation of the Plan on December 5, 2019.

    Attached to the Plan are exhibits containing financial information that may help you decide how to vote and whether to object to confirmation.  **Exhibit 1** includes background information regarding Debtor and the events that led to the filing of the bankruptcy petition and describes significant events that have occurred during this Chapter 11 case.  **Exhibit 2** contains an analysis of how much creditors would likely receive in a Chapter 7 liquidation.  **Exhibit 3** shows Debtor's monthly income and expenses.  **Exhibit 4** describes how much Debtor is required to pay on the effective date of the plan.  **Exhibit 5** shows Debtor's monthly income and expenses related to each investment property.

Individual Chapter 11  
Combined Plan & Disclosure Statement    (Version: 7/30/12)  
This combined plan and disclosure statement dated 10/4/2019 replaces the plan dated 8/19/2019

1

Whether the Plan is confirmed is subject to complex legal rules that cannot be fully described here. You are strongly encouraged to read the Plan carefully and to consult an attorney to help you determine how to vote and whether to object to confirmation of the Plan.

If the Plan is confirmed, the payments promised in the Plan constitute new contractual obligations that replace the Debtor's pre-confirmation debts. Creditors may not seize their collateral or enforce their pre-confirmation debts so long as Debtor performs all obligations under the Plan. If Debtor defaults in performing Plan obligations, any creditor can file a motion to have the case dismissed or converted to a Chapter 7 liquidation, or enforce their non-bankruptcy rights. Debtor will be discharged from all pre-confirmation debts (with certain exceptions) if Debtor makes all Plan payments. Enforcement of the Plan, discharge of the Debtor, and creditors' remedies if Debtor defaults are described in detail in Parts 5 and 6 of the Plan.

**PART 1: TREATMENT OF SECURED CREDITORS**

**All secured claims have been paid from the sale of the debtor's real property assets and there are no remaining claims in this class.**

**PART 2: TREATMENT OF GENERAL UNSECURED CREDITORS**

**Class 2(a). General Unsecured Claims.**

| Name of Creditor | Amount of Claim | Disputed Y/N | Amount to be Paid | Single Payment on Effective date of plan |
|---|---|---|---|---|
| Browne George Ross, LLP | $43,876.08 | N | $5,971.67 | $5,971.67 |
| Franchise Tax Board | $35,169.64 | N | $4,786.47 | $4,786.47 |
| Kit Mui Yam | $100,000.00 | N | $13,609.60 | $13,609.90 |
| PG&E | $7,916.83 | N | $1,078.11 | $1,078.11 |
| Montgomery-Washington Tower HOA | $231,014.05 | N | $31,443.17 | $31,443.17 |
| Trinity Financial Services, LLC | $285,776.63 | N | $38,895.24 | $38,895.24 |

The Debtors will make the lump sum payments as outlined herein above from the remaining (net) proceeds from the sale of the real property in order to pay claims treated as General Unsecured Claims.

Each creditor will receive on the Effective Date of the Plan a single payment equal to the lesser of its allowed claim or the amount listed above.

Allowed claims of general unsecured creditors (including allowed claims of creditors whose executory contracts or unexpired leases are being rejected under this Plan) shall be paid as follows:

**Pot Plan.** Creditors will receive a pro-rata share of a fund totaling $95,784.26, created by Debtor's payment of $95,784.26 upon the effective date of the plan. Pro-rata means the entire amount of the fund divided by the entire amount owed to creditors with allowed claims in this class.

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **This class is impaired and is entitled to vote on confirmation of the Plan.** Debtor has indicated above whether a particular claim is disputed.

**PART 3: TREATMENT OF PRIORITY AND ADMINISTRATIVE CLAIMS**
(a) <u>Professional Fees</u>.

Debtor will pay the following professional fees in full on the Effective Date, or upon approval by the court, whichever is later.

| Name and Role of Professional | Estimated Amount | Payment Amount | Number of payments |
|---|---|---|---|
| Law offices of Richard A. La Cava, APC<br>Richard A. La Cava Attorney for the Debtor (Projected through confirmation, less the $6,000.00 paid Retainer) | $53,070.24 − $6,000.00 =$47,070.24 | $35,070.24 upon the effective date or approval of the fees then $500.00 per month for 24 | 25 |

|  | months |  |
|---|---|---|

The following professionals have agreed to accept payment over time as follows. Payments will be made [monthly/quarterly}, due on the [number] day of the [month/quarter], starting [date} or upon approval by the court, whichever is later.

| Name and Role of Professional | Estimated Amount | Payment Amount | Number of Payments |
|---|---|---|---|
| None | | | |

Professionals may not take collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **Estate professionals are not entitled to vote on confirmation of the Plan.**

(b) <u>Other Administrative Claims</u>. Debtor will pay other allowed claims entitled to priority under section 503(b) in full on the Effective Date; except expenses incurred in the ordinary course of Debtor's business or financial affairs, which shall be paid when normally due and payable (these creditors are not listed below). All fees payable to the United States Trustee as of confirmation will be paid on the Effective Date; post-confirmation fees to the United States Trustee will be paid when due.

Administrative Creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **Administrative claimants are not entitled to vote on confirmation of the Plan.**

| Name of Administrative Creditor | Estimated Amount of Claim |
|---|---|
| United States Trustee | $327.25 for 4th quarter |

(c) <u>Tax Claims</u>. Debtor will pay allowed claims entitled to priority under section 507(a)(8) in full in a lump sum from the real property sold. Payments will be made upon the effective date of the plan

Priority tax creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **Priority tax claimants are not entitled to vote on confirmation of the Plan.**
Individual Chapter 11
Combined Plan & Disclosure Statement (Version: 7/30/12)
October 11, 2013
-4-
Case: 15-31452   Doc# 260   Filed: 12/12/19   Entered: 12/12/19 14:46:45   Page 4 of 15

| Name of Creditor | Estimated Amount of Claim | Statutory Interest Rate | Payment Amount | Number of Payments |
|---|---|---|---|---|
| Internal Revenue Service | 80,744.97 | 0.00 | 80,744.97 | One |

**PART 4: EXECUTORY CONTRACTS AND UNEXPIRED LEASES**
  (a)    Debtor has no executory contracts.


**PART 5: DISCHARGE AND OTHER EFFECTS OF CONFIRMATION**
(a) <u>Discharge</u>.  Debtor shall not receive a discharge of debts until Debtor makes all payments due under the Plan or the court grants a hardship discharge.

(b) <u>Vesting of Property</u>.  On the Effective Date, all property of the estate and interests of the Debtor will vest in the reorganized Debtor pursuant to § 1141(b) of the Bankruptcy Code free and clear of all claims and interests except as provided in this Plan, subject to revesting upon conversion to Chapter 7 as provided in Part 6(f) below.

(c) <u>Plan Creates New Obligations</u>.  Except as provided in Part 6(d) and (e), the obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under California law.  To the extent a creditor retains a lien under the Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.


**PART 6: REMEDIES IF DEBTOR DEFAULTS IN PERFORMING THE PLAN**
(a) <u>Creditor Action Restrained</u>.  The confirmed Plan is binding on every creditor whose claims are provided for in the Plan. Therefore, even though the automatic stay terminates on the Effective Date with respect to secured claims, no creditor may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as Debtor is not in material default under the Plan, except as provided in Part 6(e) below.

(b) <u>Obligations to Each Class Separate</u>.  Debtor's obligations under the Plan are separate with respect to each class of

creditors. Default in performance of an obligation due to members of one class shall not by itself constitute a default with respect to members of other classes. For purposes of this Part 6, the holders of all administrative claims shall be considered to be a single class, the holders of all priority claims shall be considered to be a single class, and each non-debtor party to an assumed executory contract or lease shall be considered to be a separate class.

(c) <u>Material Default Defined</u>. If Debtor fails to make any payment, or to perform any other obligation required under the Plan, for more than 10 days after the time specified in the Plan for such payment or other performance, any member of a class affected by the default may serve upon Debtor and Debtor's attorney (if any) a written notice of Debtor's default. If Debtor fails within 30 days after the date of service of the notice of default either: (i) to cure the default; (ii) to obtain from the court an extension of time to cure the default; or (iii) to obtain from the court a determination that no default occurred, then Debtor is in Material Default under the Plan to all the members of the affected class.

(d) <u>Remedies Upon Material Default</u>. Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further order of the court has relief from stay to the extent necessary, and may pursue its lawful remedies to enforce and collect Debtor's pre-confirmation obligations.

(e) <u>Claims not Affected by Plan</u>. Upon confirmation of the Plan, and subject to Part 5(c), any creditor whose claims are left unimpaired under the Plan may, notwithstanding paragraphs (a), (b), (c), and (d) above, immediately exercise all of its contractual, legal, and equitable rights, except rights based on default of the type that need not be cured under section 1124(2)(A) and (D).

(f) <u>Effect of Conversion to Chapter 7</u>. If the case is at any time converted to one under Chapter 7, property of the Debtor shall vest in the Chapter 7 bankruptcy estate to the same extent provided for in section 348(f) of the Bankruptcy Code upon the conversion of a case from Chapter 13 to Chapter 7.

(g) <u>Retention of Jurisdiction</u>. The bankruptcy court may exercise jurisdiction over proceedings concerning: (i) whether Debtor is in Material Default of any Plan obligation; (ii)

whether the time for performing any Plan obligation should be extended; (iii) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this court (see Part 7(f)); (iv) whether the case should be dismissed or converted to one under Chapter 7; (v) any objections to claims; (vi) compromises of controversies under Fed. R. Bankr. Pro. 9019; (vii) compensation of professionals; and (viii) other questions regarding the interpretation and enforcement of the Plan.

**PART 7: GENERAL PROVISIONS**

(a) <u>Effective Date of Plan</u>.  The Effective Date of the Plan is the fifteenth day following the date of the entry of the order of confirmation, if no notice of appeal from that order has been filed.  If a notice of appeal has been filed, Debtor may waive the finality requirement and put the Plan into effect, unless the order confirming the Plan has been stayed.  If a stay of the confirmation order has been issued, the Effective Date will be the first day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

(b) <u>Disputed Claim Reserve</u>.  Debtor will create a reserve for disputed claims.  Each time Debtor makes a distribution to the holders of allowed claims, Debtor will place into a reserve the amount that would have been distributed to the holders of disputed claims if such claims had been allowed in the full amount claimed.  If a disputed claim becomes an allowed claim, Debtor shall immediately distribute to the claimant from the reserve an amount equal to all distributions due to date under the plan calculated using the amount of the allowed claim.  Any funds no longer needed in reserve shall be [select one] [returned to Debtor] [distributed pro-rata among allowed claims in this class].

(c) <u>Cramdown</u>.  Pursuant to section 1129(b) of the Bankruptcy Code, Debtor reserves the right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors.

(d) <u>Severability</u>.  If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

(e) <u>Governing Law</u>.  Except to the extent a federal rule of

decision or procedure applies, the laws of the State of California govern the Plan.

(f) <u>Lawsuits</u>. None

(g) <u>Notices</u>. Any notice to the Debtor shall be in writing, and will be deemed to have been given three days after the date sent by first-class mail, postage prepaid and addressed as follows: Debra Guajardo 617 Broadway Street #482 Sonoma CA 95476.

(h) <u>Post-Confirmation United States Trustee Fees</u>. Following confirmation, Debtor shall continue to pay quarterly fees to the United States Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6). So long as Debtor is required to make these payments, Debtor shall file with the court quarterly reports in the form specified by the United States Trustee for that purpose.

(i) <u>Deadline for § 1111(b) Election</u>. Creditors with an allowed secured claim can make a timely election under section 1111(b) no later than 14 days before the first date set for the hearing on confirmation of the Plan.


Dated: 10/4/2019

          <u>Debra Marie Guajardo/s/</u>
          **DEBRA MARIE GUAJARDO**, Debtor


          <u>Richard A. La Cava/s/</u>
          Richard A. La Cava
          Attorney for Debtor

**Attorney Certification**

    I, Richard A. La Cava, am legal counsel for the Debtor(s) in the above-captioned case and hereby certify the following: (i) the foregoing plan is a true and correct copy of the Individual Chapter 11 Combined Plan and Disclosure Statement promulgated by the Northern District of California, San Francisco Division, on July 30, 2012 (the "Standard-Form Plan"); and (ii) except as specified below, there have been no alterations or modifications to any provision of the Standard-Form Plan.

    The following provisions of the Standard-Form Plan have been altered or otherwise modified.

> Page Two, Paragraph 3 the Box was deleted as all secured creditors had been paid prior to the filing of the plan and disclosure statement.

    I declare that the foregoing is true and correct. Executed this 4th day of October, 2019.

                                 Richard A. La Cava/s/
                                   Attorney for Debtor(s)

Individual Chapter 11
Combined Plan & Disclosure Statement         (Version: 7/30/12)
October 11, 2013
-9-
Case: 15-31452   Doc# 260   Filed: 12/12/19   Entered: 12/12/19 14:46:45   Page 9 of 15

**Exhibit 1 - Events That Led To Bankruptcy**

1.  This Chapter 11 case was prompted, in large part, by a foreclosure and pending Trustee sale against the Debtors real property due to the debtors divorce, the winding down of her former husbands law firm and her loss of income and divorce proceeding. Law suits between the Debtor and former clients of her former husbands law firm (legal practice) also created a cloud on title to the real property assets and required a law suite to resolve the claims of certain creditors.

2.  The debtor was able to reach a settlement with certain creditors that allowed her to free up proceeds from the sale of debtors former residence and former business assets that are the principle assets recovered to fund the plan and where the principle asset of this case. The settlement has left the debtor in a financial position to fund a plan and all non exempt assets have to used to fund the plan. All Secured creditors have been paid in full prior to the submission of this proposed plan.

3.  At this time the Debtor has resolved the prior lawsuit. The Debtor has attempted to gain full time employment to provided additional income to fund the plan, however she has been unsuccessful in her employment attempts due to what she believes is her age and lack of work experience outside the legal profession and due to the divorce and winding down of her former husbands law firm she has been told she is unemployable in the legal community where she has her only employment experience.

4.  She filed this case in order to allow them time to stop the trustee sale and focus on rehabilitating the real property and getting the property ready to be properly marketed to maximize its value to creditors and the estate. She made substantial repairs to the real property as evidenced in the Motions to approve the sale and removed clouds on title.

The Debtors objective with this case was to give her time to stabilize her financial situation stop the Trustee sale and loss of two valuable real property assets and to settle state court litigation that involved her former husband law practice. At this time the State court law suite has been settled, and claims arising from the State Court case where settled for less than the amounts originally claimed thereby making additional funds available to unsecured creditors that would have gone to secured creditors. The real property assets

have been sold for their fair market value and the Debtor has been awarded Social Security benefits from which she will fund additional payment to pay administrative claims, and her counsel has agreed to reduced fees in this case and to take a deferred payment on $12,000.00 of the fees over 24 months.

**Exhibit 2 - What Creditors Would Receive if the Case Were Converted to a Chapter 7**

Real Property #1: sold 44 Mendosa Avenue San Francisco, CA 94116

| Fair Market Value | Liens | Cost of Sale | Resulting Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| $2,000,000.00 | 1st 1,619,169.43 | $100,000.00 | Unknown | $175,000.00 | $48,297.05 |
| | | | | | |

Real Property #2: sold 611 Washington St. No. 2206 San Francisco, CA 94111

| Fair Market Value | Liens | Cost of Sale | Resulting Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| $1,049,000.00 | 1st 722,072.32 | $31,470.0 | Unknown | 0.0 | $75,541.47 |
| | 2nd HOA lien 12,859.95 | | | | |
| | Tax lien paid $201,496.06 | | | | |

Real Property #3: escrow proceeds for 553-555 Clay Street San Francisco, CA 94111

| Fair Market Value | Liens | Cost of Sale | Resulting Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| $125,689.55 | Settlement payments per court order total $35,000.00 | $31,470.0 | Unknown | 0.0 | $90,689.55 |
| | 2nd HOA lien 12,859.95 | | | | |

Individual Chapter 11
Combined Plan & Disclosure Statement (Version: 7/30/12)
October 11, 2013

-11-

Personal Property:

| Description | Liquidation Value | Secured Claim | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|
| Cash on deposit and retainer | $6,327.25 | None | $6,327.25 | $6000.00 retainer |
| Automobile #1 | None | None | n/a | n/a |
| Automobile #2 | None | None | n/a | n/a |
| Household Furnishings | $ 650.00 | None | 650.00 | $    0.00 |
| Jewelry | None | None | n/a | n/a |
| Equipment | None | None | n/a | n/a |
| Stocks / Investments | None | None | n/a | n/a |
| Other Personal Property | None | None | n/a | n/a |
| TOTAL all personal property is exempt | | | | $0.00 |

| | |
|---|---|
| Net Proceeds of Real Property and Personal Property | $217,855.32 |
| Recovery from Preferences / Fraudulent Conveyances       [ADD] | $    0.00 |
| Chapter 7 Administrative Claims                     [SUBTRACT] | $    0.00 |
| Chapter 11 Administrative Claims                    [SUBTRACT] | $53,070.24 |
| Priority Claims                                     [SUBTRACT] | $80,744.97 |
| Chapter 7 Trustee Fees                              [SUBTRACT] | $21,152.90 |
| Chapter 7 Trustee's Professionals (unknown)         [SUBTRACT] | $    0.00 |
| NET FUNDS AVAILABLE FOR DISTRIBUTION TO UNSECURED CREDITORS | $62,887.21 |

| | |
|---|---|
| Estimated Amount of Unsecured Claims | $703,753.23 |
| Percent Distribution to Unsecured Creditors Under Proposed Plan | 13.60% |
| Percent Distribution to Unsecured Creditors Under Liquidation Analysis | 8.93% |

## Exhibit 3 - Monthly Income and Expenses

| **Income** | Amount |
|---|---|
| Gross Employment Income | $0.00 |
| Gross Business Income | $0.00 |
| Disability and Retirement pension income Social Security | $3673.52 |
| Positive Cash Flow on Investment Property (Exhibit 5, Line A) | n/a |
| **A. Total Monthly Income** | $3673.52 |

| Expenses<br>Includes Plan Payments on Secured Claims for Residence and Car | Amount |
|---|---|
| Payroll Taxes and Related Withholdings Medical and Dental | |
| Retirement Contributions (401k, IRA, PSP)(8.57 percent of gross) | $ |
| Shelter Expenses (rent/mortgage, insurance, taxes, utilities) | $1,291.03 |
| Household Expenses (food) | $ 861.80 |
| Transportation Expenses (car payment, fuel, oil and maintenance) | $ 222.91 |
| Personal Expenses (e.g. recreation, clothing, laundry, medical $400.00) | $ 470.53 |
| Alimony / Child Support | $ |
| Other Expenses (Maintenance and upkeep on rental unit) | $ 109.08 |
| Negative Cash Flow on Investment Property (Exhibit 5, Line B) | $ |
| Real Property insurance | $ |
| Medical Insurance (Debtor)dependent son's medical care | $ 218.17 |
| Auto Insurance | $ |
| 401(k) Loan repayment to repay $20,000.00 loan to pay unsecured creditors lump sum upon confirmation | $ |
| **B. Total Monthly Expenses** | $3173.52 |

| **C. Disposable Income** (Line A - Line B) | $500.00 |
|---|---|

| **Plan Payments**<br>Plan Payments Not Included in Calculating Disposable Income | Amount |
|---|---|
| Administrative Claims | $500.00 |
| Priority Claims | $ 0.00 |
| General Unsecured Creditors | $ |
| Secured Creditor Claim for Arrears | $ |
| **D. Total Plan Payments** | $500.00 |

| **E. Plan Feasibility** (Line C - Line D)<br>(Not feasible if less than zero). | $0.00 |
|---|---|

Individual Chapter 11
Combined Plan & Disclosure Statement (Version: 7/30/12)
October 11, 2013

-13-

**Exhibit 4 - Effective Date Feasibility**

Can the Debtor Make the Effective Day Payments?

|  | Amount | Amount |
|---|---|---|
| A. Projected Total Cash on Hand on Effective Date |  | 217,855.32 |
| Payments on Effective Date |  |  |
| Payment to Secured Creditors on arrears | 0.0 |  |
| Administrative Expense Claims | $41,070.24 |  |
| Priority Claims | $80,744.97 |  |
| General Unsecured Claims (Class 2(a)) | $95,712.86 |  |
| U.S. Trustee Fees | $    327.25 |  |
| B. Total Payments on Effective Date |  | $217,855.32 |
| **C. Net Cash on Effective Date** (Line A - Line B) (Not feasible if less than zero) |  | 0.00 |

Individual Chapter 11
Combined Plan & Disclosure Statement  (Version: 7/30/12)
October 11, 2013

-14-

**Exhibit 5 - Investment Property Analysis**

**Properties with Negative Monthly Cash-Flow: NONE**

| Rental Income | Mortgage | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|
| None | | | | | |
| | | | | | |
| B. Total Negative Cash Flow | | | | | 0.00 |